# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| WILLIAM RAY AMENDE, | Cause No. CV 10-00049-BLG-RFC-CSO |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| SGT. SPENCER ANDERSON, and OFFICER JAMES BAISCH, | |
| Defendants. | |

This action is based on an allegation of excessive use of force during the arrest of Plaintiff William Amende on March 13, 2009.  On June 9, 2011, Defendants filed a motion for summary judgment.  (*Court Doc. 24*).[1]  Amende did not file a response to Defendants' Motion but did file his own Motion for Summary Judgment on June 17, 2011.  (*Court Doc. 28*).  Defendants responded to Amende's motion on July 8, 2011.

---

[1]Defendants provided Amende with a Notice and Warning to pro se litigants pursuant to <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1998). (*Court Doc. 23*).

(*Court Doc. 29*).  The parties' motions are ready for resolution.

# I.    SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if they can demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986) (summary judgment appropriate where documentary evidence permits only one conclusion.)

According to the newly amended Rule 56 of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by:  (A) citing to
> particular parts of materials in the record, including
> depositions, documents, electronically stored information,
> affidavits or declarations, stipulations (including those made
> for purposes of the motion only), admissions, interrogatory
> answers, or other materials; or (B) showing that the
> materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce

---

[2]Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Thus, the party seeking summary judgment bears the initial burden of presenting the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, it believes demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a defendant files a properly supported motion for summary judgment, a plaintiff may not rest on their allegations alone without any significant probative evidence tending to support the complaint. Anderson, 477 U.S. at 249 quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250 (internal citations omitted).

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must

be evidence on which the jury could reasonably find for the [non-moving party].  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

Anderson, 477 U.S. at 252.  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial."  California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (*emphasis in original*). Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment.  Anderson, 477 U.S. at 248.  At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter, but to determine whether there is a genuine issue for trial.  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct.

1348, 1356 (1986).

Where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt on summary judgment issues. <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); <u>Baker v. McNeil Island Corrections Ctr.</u>, 859 F.2d 124, 127 (9th Cir. 1988).

## II. STATEMENT OF CASE

### A. Parties

Amende is a state prisoner incarcerated at the Dawson County Correctional Facility in Glendive, Montana. The Defendants are Sgt. Spencer Anderson and Officer James Baisch of the Rosebud County Sheriff's Department. Although both parties list the Rosebud County Sheriff's Department in the style of their motions and Defendants discuss the Sheriff Department's and the County's liability in their motion, the Sheriff's Department was terminated as a Defendant pursuant to the Court's September 29, 2010 Order and will not be addressed herein. (*Court Doc. 13* at 2).

## C.    Allegations

In his Amended Complaint, Amende alleges excessive force, mistreatment of prisoners, unauthorized restraints, and supervisory liability.  (*Court Doc. 12, p. 4, ¶ IV(A)*).  He contends Deputy Baisch threw him to the ground while his hands were cuffed behind his back and as a result he received a cut to his upper lip which required five stitches.  He also complains he was tied to the back seat of a patrol car by both Defendants.

## C.    Statement of Facts

Amende was arrested on March 13, 2009 and charged with driving or being in actual physical control of a motor vehicle while under the influence of alcohol or drugs (second offense); driving while license suspended or revoked; criminal possession of dangerous drugs; criminal possession of drug paraphernalia; and two counts of attempt of assault on a peace officer.  (*Court Doc. 26– Defendants' Statement of Undisputed Facts, ¶ 1 citing Court Doc. 26-1*).

At the time of his arrest, Amende was handcuffed and placed in

the back of a Rosebud County Sheriff's Office patrol vehicle by

Defendant Deputy James Baisch. (*Court Doc. 26-Statement of*

*Undisputed Facts,* ¶ *2 citing Court Doc. 26-2: Rosebud County Sheriff's*

*Office Narrative to Incident Report*).[3]  There was a camera in the patrol

vehicle and the DVD recorded by that camera at the time of Amende's

arrest was submitted as part of the record.  *Court Doc. 27.*

While in the back seat of the patrol vehicle, Amende became

extremely agitated and told Baisch, "I'm going to f___ing flip out."

Deputy Baisch believed Amende could be a problem while being

---

[3]Neither Defendant submitted an affidavit in support of their motion. Deputy Baisch's narrative report can be considered under Rule 803(8)(B) of the Federal Rules of Evidence which deems a public report admissible if it sets forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Fed.R.Evid 803(8)(B). "It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not." United States v. Pzsint, 703 F.2d 420, 424 (9th Cir. 1983). Amende testified as to the authenticity of the video of the incident as it relates to the inside of the car, therefore the video and Amende's statements made inside the car will also be considered. *See also* Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents.")

transported to jail in Forsyth because on prior occasions Amende had

become combative after being placed in the back of a patrol vehicle.

During one previous arrest, Amende hit a back window of a patrol truck

with his head and it popped out.  (*Court Doc. 26-3, p. 9: Amende Depo.*

*p. 55, lines 2-14*).  In another arrest, Amende "bowed" a patrol vehicle

door by kicking it.  (*Court Doc. 26-3, p. 9: Amende Depo., p. 55, lines 18-*

*23*).

At 4:24 p.m. Amende started striking the rear driver's side

window with his head.  Baisch continually told Amende to stay calm.

Amende then laid on the seat to attempt to kick out the rear windows of

the patrol vehicle.  Baisch told Amende not to kick out the windows.

Amende said, "I mean it I will", "F___ you", and "I'll kick out your

windows and I will kick you in the f___ing chops."  Baisch opened the

driver's side door so Amende could not break the window.

Although Amende denies that he "immediately jumped out of the

vehicle" as set forth in Baisch's narrative report, he did exit the vehicle

and stood approximately 12 inches in front of Baisch.  Baisch was afraid

Amende was going to make good on his threat to assault him and so he grabbed Amende by the arm and forced him to the ground. Upon landing on the ground Amende started bleeding from his face. Baisch told Amende to calm down but Amende did not. Baisch had his arms on Amende's back trying to hold him down. Baisch believed Amende started spitting blood at him. Amende contends he was just spitting the blood from his injury out of his mouth. Baisch forced Amende onto his stomach and pushed his face down with his hand. Amende started kicking his feet spinning on the ground. Amende continued trying to roll over and turn his head to face Baisch. Officer Beckman arrived on scene and secured Amende's legs so he could not kick the officers. Baisch called Sergeant Anderson on his portable radio and requested him to come back to the location. Amende asked the officers to take the cuffs off, challenging the officers to fight. Baisch told Amende to keep calm. Amende was screaming and yelling at the officers to take the handcuffs off.

At 4:29 p.m. Sergeant Anderson arrived. Amende continued

trying to rollover and kick his legs. Amende said, "I ain't going easy man, take off these cuffs." Sergeant Anderson put a pair of leg irons on Amende's ankles. Officer Beckman placed a spit mask on Amende's head, so he could not spit on the officers. Amende refused to stand up and had to be carried to Baisch's patrol car by Sergeant Anderson and Baisch. Amende then refused to get into the patrol car and Officer Beckman had to pull Amende into the patrol car from the passenger's side. Amende resisted this by hooking his legs under the open driver's side rear door. Baisch had to remove Amende's legs from under the door. During this process Amende did not comply with any commands, instead called the officers "mother f___ers."

After Amende was placed in the patrol car he attempted to kick out the driver's side rear window. Baisch then tied a rope to the leg irons that Baisch then secured to the driver's side rear door so Amende could not kick out the window.

At 4:35 p.m. Amende hit his head on the driver's side rear window and said, "I still got my head." Amende then started hitting his head on

the metal screen that divides the front seat from the back seat. It appeared that Amende was hitting the steel mesh as hard as he could and could be harming himself. It was clear that Amende would have to be restrained from hitting his head on the cage or he would hurt himself.

Sergeant Anderson and Baisch entered the vehicle and attempted to restrain Amende from hitting his head. Baisch placed one hand on the front of Amende's neck and one hand behind Amende's neck in an attempt to restrain Amende from striking Baisch or Sergeant Anderson with his head. Amende would push his head forward against Baisch's hand.

At 4:41 p.m. Sergeant Anderson and Baisch placed a transport belt on Amende. While they were doing this Amende attempted to strike Baisch in the face with his head. Baisch pushed Amende's head down to try to stop him from striking Sergeant Anderson or himself. Baisch also attempted several times to use pressure points to get compliance from Amende. It did not appear that Amende was in pain

as a result of the officers' actions. As Baisch was holding Amende's head down Amende said, "Keep pushing my neck and I'm gonna knee you in you (sic) f___ing balls." Baisch took this threat seriously and thought that if Amende had the opportunity he would follow through on his threat. Amende continued hitting his head on the front divider and the rear divider. Sergeant Anderson advised Baisch he wanted to tape two of the seat belts together in an attempt to keep Amende from striking his head on the steel divider. Amende told Sergeant Anderson, "You use that dude I'm gonna really flip out on you."

At 4:48 p.m. Baisch was going to place another seat belt on Amende in a further attempt to keep him from striking the center divider with his head and injuring himself. Amende told Baisch, "Jimmy, you touch me and I'm going to kick you." While Sergeant Anderson was attempting to place the additional seat belt on Amende, Amende tried to strike Sergeant Anderson in the face with his head. Officer Beckman attempted to stop Amende from striking Sergeant Anderson by holding Amende's head back by Amende's hair. Amende

advised Baisch, "You've got to take these cuffs off sometime."

At 5:02 p.m., Baisch left the scene with Amende, heading to the jail in Forsyth.

The sole injuries claimed by Amende are the injury to his lip and "degradation" caused by the use of rope and duct tape to restrain him in the patrol car. (*Court Doc. 26–Undisputed Facts, ¶ 5 citing Court Doc. 26-3: Amende Depo., p. 27, lines 1-11*). While Amende does not deny he needed to be secured in some manner, he claims the deputies should have hog-tied him. (*Court Doc. 26–Undisputed Facts, ¶ 5, citing Court Doc. 26-3: Amende Depo., p. 23, lines 1-22*).

Pursuant to a plea agreement dated October 26, 2009, one count of Attempt of Assault on a Peace Officer was dismissed. Amende pled guilty to all other charges. (*Court Doc. 26–Undisputed Facts, ¶ 7 citing Court Doc. 26-1*).

## III. ANALYSIS

A claim that a law enforcement officer used excessive force in the course of an arrest or other seizure and while an offender is detained

post-arrest but pre-arraignment is analyzed under the Fourth

Amendment reasonableness standard. Graham v. Connor, 490 U.S.

386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Determining

whether the force used to effect a particular seizure is 'reasonable'

under the Fourth Amendment requires a careful balancing of 'the

nature and quality of the intrusion on the individual's Fourth

Amendment interests' against the countervailing governmental

interests at stake." Graham, 490 U.S. at 396 (citations omitted).

Whether a law enforcement officer's use of force was "objectively

reasonable" depends upon the totality of the facts and circumstances

confronting him. Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir.)

(en banc) (quoting Graham, 490 U.S. at 397, 109 S.Ct. at 1872), cert.

denied, 545 U.S. 1128, 125 S.Ct. 2938, 162 L.Ed.2d 866 (2005).

"The question is whether the officers' actions are 'objectively

reasonable' in light of the facts and circumstances confronting them,

without regard to their underlying intent or motivation." Graham, 490

U.S. at 397 (citation omitted). Reasonableness must be assessed from

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. 397.

The relevant factors in the Fourth Amendment reasonableness inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. While these are the most common considerations, they are not "a magical on/off switch that triggers rigid preconditions" to determine whether an officer's conduct constituted excessive force. Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1777, 167 L.Ed.2d 686 (2007). Consequently, courts consider other factors, such as the availability of alternative methods of capturing or detaining the suspect in determining reasonableness. Chew v. Gates, 27 F.3d 1432,

1441 (9th Cir. 1994).

Cases alleging use of excessive force "nearly always require[ ] a jury to sift through disputed factual contentions, and to draw inferences therefrom," and, therefore "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003) (citing Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).  In this case, however, there a very few disputed factual contentions.  Almost the entire incident was recorded on the video which Amende concedes is an accurate depiction of the incident.  *Court Doc. 26-3 at 4.*  Based upon this video, it is clear that summary judgment is appropriate.

On the video Amende appears intoxicated, noncompliant, and violent.  He attempted to damage the patrol vehicle and to injure the officers. Conversely, the officers reacted calmly to Amende and handled him in a professional manner.

Amende complains of two incidents of excessive force: (1) Baisch's take down of Amende resulting in the injury to Amende's face, and (2)

the method of restraint utilized in the back seat of the patrol car. These incidents will be analyzed separately.

## A. Take Down

First, it is necessary to assess the quantum of force used. The three factors articulated in <u>Graham</u>, and other factors bearing on the reasonableness of a particular application of force, are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure. <u>Chew</u>, 27 F.3d at 1441. It is undisputed that Amende exited the vehicle and Officer Baisch took him by the arm and forced him to the ground. At the time of the take down, Amende's hands were handcuffed behind his back. As a result of the take down, Amende suffered a cut on his face that required stitches.

In this situation, the use of force (forcing Amende to the ground) was minimal especially in light of the other <u>Graham</u> factors. First, Baisch was reasonable in his assumption that Amende would "make good on his threat to assault me." *Court Doc. 26-2 at 3.* Amende had become violent in the vehicle and had threatened to harm Baisch.

Although he was handcuffed, Amende was clearly noncompliant and unpredictable.

Although the severity of the crime does not significantly impact this excessive force analysis, the final factor – whether the individual actively resisted arrest or attempted to evade arrest by flight is important. According to Baisch's narrative, one suspect had already escaped the area and the other officers at the scene had all gone to look for that suspect. Baisch was alone with a violent, unpredictable suspect, and had a short time to react. Amende was arguing with Baisch, he was intoxicated, he was noncompliant, and he was violent.

As such, the actions of Baisch in taking Amende down to the ground did not constitute excessive force.

## B. Restraints Used in Back of Patrol Car

The method of restraint used to keep Amende from injuring himself in the back of the patrol vehicle did not constitute excessive force. First, while the use of the restraints in the vehicle may have felt degrading to Amende, it was a minimal use of force. Amende complains

of no physical injury from the method of restraint. Secondly, Amende was a threat to himself and the officers. On numerous occasions, Amende struck his own head on the vehicle and attempted to assault the officers on at least two occasions. He plead guilty to attempting to assaulting (trying to head butt) one of the officers. *Court Doc. 26-1 at 2-3.* Moreover, Amende was attempting to kick the windows out of the patrol vehicle, something he had done in the past.

Although Amende suggested in his deposition that hog-tying him would have been a more appropriate use of restraints, officers are not required to use the least intrusive means available to restrain a suspect. <u>Scott v. Henrich</u>, 39 F.3d 912, 915 (9th Cir. 1994). They simply must act within the range of reasonable conduct. <u>Id.</u> In light of Amende's continuing attempts to harm himself and the officers, the Defendants' actions were reasonable. Accordingly, the restraint method did not constitute excessive force.

## IV. CONCLUSION

There is no issue of material fact to preclude the entry of summary

judgment for Defendants.  The documentary evidence permits only one conclusion:  Defendants did not use excessive force in violation of Amende's Fourth Amendment rights.  As such, Defendants' Motion for Summary Judgment should be granted and Amende's motion denied.

At all times during the pendency of this action, Amende SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date. The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based on the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  Defendants' Motion for Summary Judgment (*Court Doc. 24*) should be GRANTED.

2.  Amende's Motion for Summary Judgment (*Court Doc. 28*)

should be DENIED.

3.  The Clerk of Court should be directed to enter judgment in favor of Defendants and close this case.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  It is so clear that Defendants are entitled to summary judgment that no reasonable person could suppose that an appeal would have merit.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would

otherwise expire.

Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 31st day of August, 2011.


<u>/s/ Carolyn S. Ostby</u>
United States Magistrate Judge